**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | No. 10 CR 617-2 |
| v. | ) | |
| | ) | |
| | ) | |
| JOEL RIVAS | ) | |
| | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

AMY J. ST. EVE, District Court Judge:

Defendant Joel Rivas has moved for a judgment of acquittal and for a new trial. For the reasons explained below, the Court denies Defendant's motion for judgment of acquittal and his motion for a new trial.

## BACKGROUND

On February 1, 2011, a federal grand jury returned a superseding indictment (the "Indictment") charging Rivas and his co-defendant, Ismael Miranda, with various felony offenses. The Indictment charged Defendant Rivas with five separate counts: (1) conspiracy to possess with intent to distribute and to distribute five kilograms or more of cocaine and marijuana, in violation of 21 U.S.C. § 846; (2) possession with intent to distribute cocaine and marijuana, in violation of 21 U.S.C. § 841(a)(1) and 28 U.S.C. §2; (3) possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c); and (4) two counts of unlawful possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). (R. 25, Indict.) Defendant pled not guilty and proceeded to trial. Co-defendant Miranda pled guilty on September 20, 2011, and the Court subsequently sentenced him to 20 years in prison. The Seventh Circuit granted Miranda's

counsel's motion to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967), and dismissed the appeal on November 8, 2012.   (R. 104.)

Defendant Rivas proceeded to a jury trial.   During the trial, the government called the following witnesses: Calvin Stringer, Beth Sterricker of the Elgin Police Department, Mark Liby, Special Agent Christopher Labno of the Bureau of Alcohol, Tobacco & Firearms ("ATF"), Corey Glass, ATF Intelligence Analyst Adam Gibson, Gregory Flowers from Kane County Jail, Miguel Pantoja from the Department of Homeland Security, and Patricia Gonzalez, an interpreter from the United States Attorney's Office.   Agent Labno gave expert testimony regarding narcotics trafficking based on his extensive experience in working narcotics investigations, including working undercover in such investigations.   In addition, the government called Edward Rottman, a fingerprint expert with the Illinois State Police, to testify at trial.   Defendant called Dennis Palmer, who was a former teacher of Defendant's.   Defendant Rivas also testified.

On July 18, 2013, following a four day jury trial, the jury returned a verdict of guilty against Defendant on all counts.   (R. 180.)   The jury found Defendant responsible for more than 5 kilograms of cocaine in connection with the drug conspiracy in Count One.   In addition, the jury found that Defendant Rivas had possessed two firearms in furtherance of the drug charge in Count Two of the Indictment.   Defendant now moves for judgment of acquittal and a new trial.

## ANALYSIS

### I.      Defendant is Not Entitled to a Motion for Judgment of Acquittal

Defendant argues that the government failed to prove him guilty beyond a reasonable doubt on each of the counts.   Defendant has not met his heavy burden on any of the counts of conviction.

### A.    Legal Standard for a Motion for Judgment of Acquittal – Rule 29

Rule 29(a) provides that, "[a]fter the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). When, as here, a defendant makes a Rule 29(a) motion at the close of the government's case, and the court reserves decision, the court "must decide the motion on the basis of the evidence at the time the ruling was reserved." Fed. R. Crim. P. 29(b).

"In challenging the sufficiency of the evidence, [a defendant] bears a heavy, indeed, nearly insurmountable, burden." *U.S. v. Warren*, 593 F.3d 540, 546 (7th Cir. 2010); *see also U.S. v. Jones*, 713 F.3d 336, 339-40 (7th Cir. 2013); *U.S. v. Berg,* 640 F.3d 239, 246 (7th Cir. 2011); *U.S. v. Dinga*, 609 F.3d 904, 907 (7th Cir. 2010); *U.S. v. Morris*, 576 F.3d 661, 665-66 (7th Cir. 2009). The reviewing court will view the "evidence in the light most favorable to the prosecution," and the defendant "'must convince' the court that, even in that light, 'no rational trier of fact could have found him guilty beyond a reasonable doubt.'" *Warren*, 593 F.3d at 546 (quoting *U.S. v. Moore*, 572 F.3d 334, 337 (7th Cir. 2009)); *see also U.S. v. Eller*, 670 F.3d 762, 765 (7th Cir. 2012); *U.S. v. Dood*y, 600 F.3d 752, 754 (7th Cir. 2010) (stating that the inquiry is "whether evidence exists from which any rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt"). In other words, a court will "set aside a jury's guilty verdict only if 'the record contains no evidence, regardless of how it is weighed,' from which a jury could have returned a conviction." *U.S. v. Presbitero*, 569 F.3d 691, 704 (7th Cir. 2009) (quoting *U.S. v. Moses*, 513 F.3d 727, 733 (7th Cir. 2008)); *see also Warren*, 593 F.3d at 546.

It follows that under Rule 29, courts "do not reassess the weight of the evidence or second-guess the trier of fact's credibility determinations." *U.S. v. Arthur*, 582 F.3d 713, 717 (7th

Cir. 2009); *see also U.S. v. Severson*, 569 F.3d 683, 688 (7th Cir. 2009).   This strict standard is a

recognition that "[s]orting the facts and inferences is a task for the jury."   *Warren*, 593 F.3d at

547.   The Seventh Circuit teaches that:

> [t]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.   But this inquiry does not require a court to ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.   Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Moore*, 572 F.3d at 337 (quoting *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 61 L.

Ed. 2d 560 (1979)).

### B.     Count One

Count One charged Defendant with a conspiracy to possess with the intent to distribute and

to distribute 5 kilograms or more of cocaine and marijuana.   In order to find Defendant guilty on

Count One, the government had to prove beyond a reasonable doubt that a conspiracy existed and

Defendant knowingly became a member of the conspiracy with an intent to advance the

conspiracy.   The government introduced sufficient evidence to establish Defendant's guilt

beyond a reasonable doubt on this count.

### 1.     The Search of the Elgin Storage Unit

On February 18, 2010, Elgin police officers executed a state search warrant at a storage

unit located at 1460 Illinois Parkway in Elgin, Illinois (the "Eglin storage unit").   Calvin Stringer,

the owner of the storage unit, testified that he rented that unit to co-defendant Miranda in late 2008

or early 2009.   Stringer testified that Miranda and Defendant Rivas worked on cars at the Elgin

storage unit.   He further testified that Defendant and Miranda installed security cameras outside

of the unit and that both of them came to the Elgin storage unit almost daily.   In addition, Stringer testified that Defendant wore a blue mechanic shirt with a nametag "Tony" when he worked at the storage unit.

During the February 18, 2010 search, the Elgin officers recovered quantities of marijuana and cocaine and two firearms – a 9mm handgun from one of the desk drawers and a .357 loaded handgun.   Detective Sterricker testified about the items recovered, and the government introduced photographs of the items as well as the actual items.   Detective Sterricker also testified that they recovered a shirt hanging on the wall with the nametag on the front pocket of the shirt that said "Tony."   The shirt had a small baggy in the pocket that turned out to be 2.1 grams of cocaine. In total, the Elgin police officers recovered approximately 210 grams of cocaine and 490 grams of marijuana during their search.   They also seized a significant amount of drug paraphernalia, including a vacuum sealer, several boxes of plastic bags, digital scales, bottles of Inositol Power (a cutting agent), a body-wire detector, and a large sprayer full of orange peels that emitted a strong citrus order.   In the toolbox where they found the loaded .357 handgun, they also found five boxes of .38 caliber ammunition, a radio frequency scanner, a body-wire detector, two bags with cocaine, a large digital scale, and a bottle of Inositol.

Furthermore, the Elgin police recovered paperwork that belonged to Defendant, including a student handbook from Rock Valley College where Defendant attended community college, several invoices from a mechanic business that Defendant ran, and a Western Union money order receipt that Defendant had sent.

## 2.    The Call with Co-Defendant Miranda

Co-defendant Miranda was at the storage unit when the Elgin police executed the search warrant.   The police arrested him on state drug charges.   While incarcerated at the Kane County

Jail, co-defendant Miranda placed a call from the jail to Defendant Rivas on March 3, 2010.   The

jail recorded the call and the government introduced it as evidence at trial.   The government

called a Spanish interpreter to testify regarding the English translation of the call. During the call,

the following exchange took place:

>MIRANDA:      Hey, what's happening, bro?   The … the law come down on us!
>
>RIVAS:      Yeah …. right?
>
>MIRANDA:      I just … got … got …got hold of a phone car; it was hard to get a hold of your number. Um…
>
>RIVAS:      I see.
>
>MIRANDA:      Um … put a stop … put a stop to all…
>
>RIVAS:      Yeah.
>
>MIRANDA:      … the shit, dud, because it's goddamn D.A., loco.
>
>RIVAS:      Oh, yeah?
>
>MIRANDA:      Yeah, it's not the feds.   I thought it was the … the   … the … the big one but no, it's just the D.A.

(Trial Transcript ("Tr") at 562-63.) Miranda informed Defendant in this exchange that the state

authorities had arrested him, not federal agents.   He also told him to "put a stop … put a stop to

all."   During the call, Miranda also told Rivas that the police were looking for him and that

Miranda would not talk to the police about Rivas:

>MIRANDA:      And truth is they're looking for you, loco.
>
>RIVAS:      Mch!   Naah?!
>
>MIRANDA:      For real, loco.   They asked me about you and don't know you.
>
>RIVAS:      No shit!

(Tr. at 563.)   Defendant and Miranda then went on to discuss who had informed the police about their drug operation.   Miranda then told Rivas "don't you worry about a thing, cause nothing's coming out of me; I don't know nothing."   (Tr. at 564.)

### 3.     The Testimony of Drug Customers

Mark Liby and Corey Glass, two of Defendant's wholesale cocaine and marijuana customers, also testified at trial.   Liby testified how he had discussed purchasing cocaine from Defendant, and Defendant thereafter had him meet his friend "Mexico" to pick up the cocaine. Liby identified co-defendant Miranda as "Mexico".   After receiving the cocaine from "Mexico", Liby then paid Defendant for it.   In addition, Liby testified that he purchased the following quantities of cocaine from Defendant Rivas: 1) four ounces; 2) 4.5 ounces on two occasions, 3) nine ounces on one to two occasions, and 4) a kilogram of cocaine two to three times.   In total, Defendant sold Liby at least 2,868 grams of cocaine.

Similarly, Corey Glass testified that he began purchasing marijuana from Defendant in late 2008, and typically purchased between two and five pounds at a time. Glass also testified that he purchased cocaine from Defendant.   Specifically, Corey Glass testified that he purchased the following quantities of cocaine from Defendant: 1) a half ounce; 2) one once on two occasions, 3) two ounces, 4) nine ounces, and 5) eighteen ounces "four or five, maybe six times."   Defendant thus sold Glass at least 2,450 grams of cocaine.

Viewing this evidence in the light most favorable to the government, a rational trier of fact could have found the essential elements of the drug conspiracy beyond a reasonable doubt. Defendant has not met his heavy burden.

### C.     Count Two

Count Two charged Defendant with possession with intent to distribute cocaine and

marijuana. In order to find Defendant guilty, the government had to prove that 1) Defendant knowingly possessed a controlled substance; and 2) Defendant intended to distribute the substance to another person; and 3) Defendant knew the substance contained some kind of a controlled substance. *See United States v. Campbell*, 534 F.3d 599, 605 (7th Cir. 2008). The evidence discussed above – including the items seized during the search of the Elgin storage unit, the quantity of cocaine and marijuana seized from the Elgin storage unit, Calvin Stringer's testimony that Defendant and Miranda rented the storage unit and went there daily, the recorded conversation with Miranda, and the testimony of Liby and Glass regarding the purchase of cocaine from Defendant inside the Elgin storage unit – supports Defendant's conviction on Count Two. Defendant's request that the Court reweigh the evidence fails.

### D.    Counts Three, Four and Five

Count Three charged Defendant with possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). In order to prove Defendant guilty of this crime, the government had to prove that 1) Defendant committed the crime of possession with intent to distribute a controlled substance as charged in Count Two of the indictment; and 2) Defendant knowingly possessed a firearm; and 3) Defendant's possession of the firearm was in furtherance of the possession with intent to distribute a controlled substance. *See United States v. Brown*, 724 F.3d 801 (7th Cir. 2013).

Counts Four and Five both charge Defendant with being a felon in possession of a firearm. Count Four pertains to the .357 revolver and Count Five involves the 9 millimeter firearm. In order to prove Defendant guilty, the government had to establish beyond a reasonable doubt that Defendant knowingly possessed the firearm, the he previously had been convicted of a felony and that the possession was in or affecting interstate commerce. *United States v. Bloch*, 718 F.3d 638,

642 (7th Cir. 2012).   Possession can be actual or constructive.

The jury found Defendant guilty of Counts Three, Four and Five.   In addition, the jury found that Defendant had possessed both firearms – the .357 revolver and the 9 millimeter firearm – in furtherance of the drug charge (possession with intent to distribute) in Count Two of the Indictment.   There was more than sufficient evidence to find Defendant guilty of all three counts. For the reasons discussed above, the government proved that Defendant committed the crime charged in Count Two of the Indictment.   In addition, the parties stipulated that Defendant had been convicted of a crime that was punishable by a term of imprisonment of more than one year. Defendant also testified about this conviction.   The parties also stipulated that both firearms traveled in interstate commerce before February 18, 2010.   Thus, the Court turns to the evidence regarding whether Defendant knowingly possessed each of the firearms and whether he possessed them in furtherance of the possession with intent to distribute a controlled substance crime charged in Count Two.   Viewing the evidence in the light most favorable to the government, the evidence more than supports a finding of guilt beyond a reasonable doubt on these counts.   *Bloch,* 718 F.3d at 642.

Detective Beth Sterricker testified that on February 18, 2010, when the Elgin police executed a search warrant at the Elgin storage unit, the officers recovered both of the firearms. They recovered the 9mm handgun from one of the desk drawers and the .357 loaded handgun from a large toolbox in the main area of the storage unit.   As discussed above, the evidence established that Defendant ran a drug operation out of the Elgin storage unit and had control over the unit and its contents.   It established that he had constructive possession -- the ability and intention to exercise direction or control over the firearms.

Regarding the 9 mm handgun, Corey Glass testified that he gave the 9mm to Defendant to

pay off a drug debt. He owed Defendant and Ismael Miranda $300 for drugs. Corey Glass recognized the specific 9 mm seized from the Elgin storage unit because it contained distinctive marks. In addition, Mark Liby, who also purchased drugs from Defendant, testified that he went to purchase marijuana from Defendant, and Defendant pulled out a 9 mm gun to show Liby. Defendant then placed the gun in a drawer next to his drugs and his possession. Finally, Edward Rottman, the fingerprint expert from the Illinois State Police, testified that the 9mm handgun contained a latent fingerprint that matched a known fingerprint of Defendant Rivas. Viewing this evidence in the light most favorable to the government, a rational trier of fact could have found that Defendant knowingly possessed the 9mm handgun beyond a reasonable doubt.

The .357 handgun was located in a toolbox at the Elgin storage unit. As described above, the evidence overwhelmingly demonstrated that Defendant had control over the Elgin storage unit and its contents. The .357 handgun was kept inside a toolbox that also contained bullets, marijuana and cocaine – all tools of Defendant's drug trade. *United States v. Brown*, 724 F.3d 801, 805 (7th Cir. 2013).

Finally, the government established that Defendant possessed the firearms in furtherance of the possession with intent to distribute a controlled substance crime charged in Count Two. As the Court instructed the jury:

> A person possesses a firearm "in furtherance of" a crime if the firearm furthers, advances, moves forward, promotes or facilitates the crime. The mere presence of a firearm at the scene of a crime is insufficient to establish that the firearm was possessed "in furtherance of" the crime. There must be some connection between the firearm and the crime.

*See United States v. Huddleston*, 593 F.3d 596, 602 (7th Cir. 2010) ("in furtherance of" prong satisfied where jury could have found that defendant possessed gun to protect himself and his stash and his profits). While courts have identified certain factors that are relevant to the issue –

including "the type of drug activity that is being conducted, accessibility of the firearm, the type of the weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found" – the Seventh Circuit has noted that it "can be easier to determine 'furtherance' by a holistic analysis than by dissecting the issue into parts." *Brown*, 724 at 803.

Christopher Labno testified that drug dealers keep guns at stash locations "[f]or the purpose of protecting themselves and their drug proceeds from robbery, debt collection, that type of thing." (Tr. at 333.) Furthermore, Corey Glass testified that Defendant had told him that he wanted the gun because he had concerns about someone stealing his drugs – indeed, he told Glass that someone had robber one of his associates. The evidence showed that Defendant kept the drugs at the Elgin storage unit and had surveillance cameras for protection. Defendant kept the 9mm very close to a vacuum-sealed bag containing 372 grams of marijuana. The law enforcement officers recovered the .357 in the red toolbox that also contained bullets, marijuana and cocaine. Both guns were loaded. A reasonable jury could believe that Defendant stored the guns at the Elgin store unit where he ran his drug business in order to protect and further increase the security of his drug trade. *United States v. Brown*, 724 F.3d 801, 802 (7th Cir. 2013).

## II. Defendant is Not Entitled to A New Trial

Defendant Rivas claims that he is entitled to a new trial for the following reasons: 1) the Court erred in denying his *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), challenge; 2) the Court erred in admitting the recorded conversation between Defendant and co-defendant Miranda; 3) the prosecutor's comments during closing arguments deprived him of a fair trial, 4) the Court erred in permitting the fingerprint expert to testify and in limiting Defendant's cross examination of the expert; 5) the Court erroneously instructed the jury; and 6)

the Court erred when it permitted the government to cross examine Defendant regarding a May 13, 2004 prior conviction.   As discussed below, Defendant's motion is denied.

### A.        Legal Standard for A Motion for a New Trial – Rule 33

Rule 33 of the Federal Rules of Criminal Procedure provides that, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."   Fed. R. Crim. P. 33(a); *see also U.S. v. Smith*, 674 F.3d 722 (7th Cir. 2012) (reviewing a district court's order on a Rule 33 motion for abuse of discretion); *U.S. v. McGee*, 408 F.3d 966, 979 (7th Cir. 2005).   "'[C]ourts have interpreted [Rule 33] to require a new trial in the interests of justice in a variety of situations in which the substantial rights of the defendant have been jeopardized by errors or omissions during trial.'"   *U.S. v. Eberhart*, 388 F.3d 1043, 1048 (7th Cir. 2004) (quoting *U.S. v. Kuzniar*, 881 F.2d 466, 470 (7th Cir. 1989)), *overruled on other grounds*, 546 U.S. 12, 126 S. Ct. 403, 163 L. Ed. 2d 14 (2005).

"'A jury verdict in a criminal case is not to be overturned lightly, and therefore a Rule 33 motion is not to be granted lightly.'"   *Eberhart*, 388 F.3d at 1048 (quoting *U.S. v. Santos*, 20 F.3d 280, 285 (7th Cir. 1994)).   The court may grant a new trial if the jury's verdict is 'so contrary to the weight of the evidence that a new trial is required in the interest of justice.'"   *U.S. v. Washington*, 184 F.3d 653, 657 (7th Cir. 1999) ("The focus in a motion for a new trial is not on whether the testimony is so incredible that it should have been excluded.   Rather, the court considers whether the verdict is against the manifest weight of the evidence, taking into account the credibility of the witnesses."); *see also U.S. v. Chambers*, 642 F.3d 588, 592 (7th Cir. 2011).   Put another way, "[t]he court should grant a motion for a new trial only if the evidence 'preponderate[s] heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand.'"   *U.S. v. Swan*, 486 F.3d 260, 266 (7th Cir. 2007) (quoting *U.S. v. Reed*, 875 F.2d

107, 113 (7th Cir. 1989)).

### B.    The Court Did Not Err in Denying Defendant's *Batson* Challenge

Defendant, who is Hispanic, contends that the Court erred in denying his *Batson* challenge

to the government's peremptory challenge to exclude Juror No. 3, an Hispanic juror.    Courts

evaluate *Batson* challenges under a three-step inquiry:

> First, the opponent of a peremptory challenge must make out a prima facie showing of race discrimination in selection of the venire.    If this showing is made, the burden of production shifts to the proponent of the strike to offer a race-neutral explanation.    Then the court must determine whether the opponent of the strike has proved purposeful discrimination.    *Purkett v. Elem,* 514 U.S. 765, 767–68, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995) (per curiam); *Batson*, 476 U.S. at 96–98, 106 S.Ct. 1712.    At the second step, the explanation need not be "persuasive, or even plausible"; the issue is whether the explanation is non-discriminatory. *Purkett,* 514 U.S. at 767–68, 115 S.Ct. 1769.    The persuasiveness of the justification becomes relevant at the third step, in which the court weighs the evidence and determines whether the race-neutral explanation is credible or a pretext for purposeful discrimination.    *Id.* at 768, 115 S.Ct. 1769; *see also United States v. Rutledge,* 648 F.3d 555, 556–57 (7th Cir. 2011) (stating that *Batson's* third step "requires the [trial] court to make a finding of fact regarding the prosecutor's credibility after the prosecutor has offered a race-neutral reason for the strike").

*Harris v. Hardy*, 680 F.3d 942, 949 (7th Cir. 2012).    *See also United States v. Yarrington*, 640

F.3d 772, 779 (7th Cir. 2011).

When Defendant asserted his *Batson* challenge, the prosecutor explained that the

government exercised a peremptory strike as to Juror #3 because Juror #3 previously had sat

through the criminal trial of her nephew.    At the end of the trial, her nephew was found not guilty

by reason of insanity.    The government had concerns about putting a person on the jury who had

had that exposure to a criminal trial of a close family member and who saw a not guilty outcome.

Defendant asserts that the government did not strike "other jurors that [sic] were employed,

had employed spouses and/or children, and watched television, and provided appropriate

responses to their willingness to follow the court's instruction and return a fair and impartial

verdict." Indeed, "[i]f a prosecutor's proffered reason for striking an [Hispanic] panelist applies just as well to an otherwise-similar [non-Hispanic] who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at *Batson*'s third step." *United States v. Taylor*, 636 F.3d 901, 905 (7th Cir. 2011). Here, however, Juror #3 was not similarly situated to any non-Hispanic jurors whom the government did not strike because she had sat through the criminal murder trial of her nephew. Her nephew went to trial on murder charges and was found not guilty by reason of insanity. The government's reasons for striking Juror #3 do not apply to the other jurors because they were not similarly situated.

Moreover, the prosecutor's race-neutral explanation was extremely credible. As the prosecutor explained:

> Our reason for striking her was based on her attendance at that murder trial where her nephew was found not guilty by reason of insanity.

> *         *         *         *         *

> Specifically, Judge, the fact that it involved a family member that was accused of a crime of which he was ultimately not convicted.

Both the prosecutor and his explanation for exercising the strike were quite credible and sincere. Defendant's challenge fails.

### C. The Court Did Not Err in Denying Defendant's Motion to Preclude Admission of His Conversation with Co-Defendant Ismael Miranda

Officers from the Elgin Police Department executed the search warrant at the storage facility on February 18, 2010. Co-defendant Miranda, who was present at the time of search, was subsequently arrested on state drug charges and detained on bond in Kane County Jail. On March 3, 2010, Miranda placed a call from Kane County Jail to a male, whom the government identified as Defendant Rivas. In the call, the two individuals spoke mostly in Spanish and discussed,

14

among other things, the events surrounding the execution of the search of the storage unit and the identity of the possible informant.

Prior to trial, Defendant argued that the conversation constituted inadmissible hearsay. The Court denied Defendant's motion to preclude the admission of the tape on two grounds: 1) the statements on the call attributed to Defendant Rivas were admissible as statements by a party opponent pursuant to Rule 801(d)(2)(A); and 2) the statements were statements of co-conspirators made during and in furtherance of a conspiracy pursuant to Rule 801(d)(2)(E).   (R. 118.) Defendant argues that the Court should not have admitted the statements of Miranda because Miranda did all the talking.   As the Court previously ruled, "[s]tatements providing context for other admissible statements are not hearsay because they are not offered for their truth."   *United States v. Simmons*, 582 F.3d 730, 736 (7th Cir. 2009); *United States v. Bermea-Boone*, 563 F.3d 621, 626 (7th Cir. 2009) ("It is well-settled that statements that are offered for context, and not for the truth of the matter asserted, are not hearsay as defined in Rule 801 of the Federal Rules of Evidence.").   Accordingly, the Court admitted the taped conversation.

In addition, the statements were made in furtherance of the conspiracy pursuant to Rule 801(d)(2)(E).   Rule 801(d)(2)(E) provides that a "statement" is not hearsay if it is "offered against a party" and is a "statement by a coconspirator of a party during the course and in furtherance of the conspiracy."   Fed. R. Evid. 801(d)(2)(E).   *United States v. Santiago*, 582 F.2d 1128 (7th Cir. 1978), *overruled on other grounds by Bourjaily v. United States*, 483 U.S. 171, 107 S. Ct. 2775, 97 L. Ed. 2d 144 (1987).   Statements may be in furtherance of a conspiracy that "keep conspirators advised about the progress of the conspiracy," *Hunt*, 272 F.3d at 495, or that were intended to demonstrate the co-conspirator's loyalty to the conspiracy.   *Stephenson*, 53 F.3d at 845; *Bustamante*, 493 F.3d at 890-91.   The statements in the call served these purposes.   After

15

co-Defendant Miranda told Defendant Rivas that the police were looking for him, for example, the following exchange occurred:

> Miranda: And for real, they're looking for you dude.
>
> Rivas: Tssk . . . HUH!
>
> Miranda: For real, dude.   They asked me about you . . . I don't know you!

(R. 118-1, English Transcript of Recording at 3.)

Later, following the discussion of whom may have "fingered" the two men to the police, co-Defendant Miranda stated the following:

> Miranda: Okay.   I'm alright, bro, I don't know nothing, I stay quiet, I value my life bro . . . I . . . you don't have to worry about anything, I don't know nothing . . . nothing's coming out of me, I don't know nothing . . .

(R. 118-1, English Transcript of Recording at 5.)

It is reasonable to interpret statements such as these, that Miranda would keep quiet and not acknowledge that he knew Rivas, as reassuring Rivas of Miranda's loyalty and as helping each party "perform [his] designated role[]" in the conspiracy.   *See Johnson*, 200 F.3d at 533. Therefore, the Court did not err in admitting them.

### D.    The Prosecutor's Comments Did Not Deprive Defendant of a Fair Trial

Defendant contends that the government committed reversible error when it made the following statement during closing arguments:

> Now, the defendant talked about this idea that he moved out of the storage unit in December of 2008, but he actually screwed up in his testimony this morning. You heard him. He said after Mark Liby got out of prison, he met with him at the storage unit. Remember, he said Mark Liby brought his girlfriend, Christina Holman? That's what he said.
>
> Now, remember when Mr. Liby was on the, stand.   He testified he went to prison on a probation violation in September, 2009. And he was released in early February of 2010. Do

you remember that, right before the Super Bowl? In fact, it was February 9th, 2010. So, it was after that, that he went to the storage unit to buy cocaine from the defendant.

In fact, if you look at those phone summary charts, if you look at those phone calls, you will see calls on February 11th, February 12th, February 13th.

What's the significance of that? It's five days before the stuff was recovered from the storage unit. That's when he was there. That's the evidence.

The defendant, who claimed he left months before -- two months before -- to go on vacation, because somebody had gotten paint on his valuable tools? No. He was there just days before, by his own admission. It was an accidental admission. He hadn't done the math. But that is what happened. That's the timeline. He hadn't thought through -- he hadn't thought through -- his testimony and he really stepped in it. And he admitted that he was in the storage unit the week of. He hadn't left.

(Tr. at 800-01.) According to Defendant, this argument misstated Defendant's testimony.

Defendant failed to object to these statements during closing arguments, thus the Court applies a plain error standard. *United States v. Iacona*, 728 F.3d 694, 699 (7th Cir. 2013). To prevail, Defendant "must first show that the prosecutor's comments were obviously or clearly improper." *United States v. Stinefast*, 724 F.3d 925, 930 (7th Cir. 2013) (citations omitted). "If the remarks were blatantly improper, [Defendant] must also demonstrate that the statements prejudiced him." *Id.* (citations and quotations omitted). *See also United States v. Tucker*, 714 F.3d 1006, 1012-13 (7th Cir. 2013).

Here, Defendant cannot establish that the government's statements prejudiced him. While Defendant did not specifically testify that he met Liby at the Elgin storage unit following Liby's release from prison, Mark Liby testified that after his release from prison, he went to the Elgin storage unit with his girlfriend to purchase drugs from Defendant. (Tr. at 262-67.) The phone records corroborated that Defendant spoke with Liby on the phone twelve times during this two day time period. (Gov. Ex. Phone Records Summary B.) The Elgin police department also recovered a note pad containing names and phone numbers at the Elgin storage unit that listed

Liby's nickname – Pork Chop.   As noted above, the evidence introduced at trial overwhelmingly established Defendant's guilt.   Thus, the government's statement does not require a new trial.

   **E.    The Court Did not Err in Denying Defendant's Motion to Exclude Expert Testimony Regarding Latent Fingerprint Identification**

   Defendant next argues that the Court erred when it denied his motion to exclude the government's fingerprint expert from testifying at trial and when it precluded him from cross examining the expert about another case in which he had no involvement.   The Court denied Defendant's *Daubert* and Federal Rule of Evidence 702 challenge to the admission of expert testimony on latent fingerprints under the Seventh Circuit's clear precedent in *United States v. Herrera*, 704 F.3d 480, 484 (7th Cir. 2013).   Defendant has failed to establish any basis for a new trial given the Seventh Circuit's clear precedent in this area.

   Next, Defendant's challenge to the scope of cross examination also fails.   Defendant sought to cross examine the fingerprint expert regarding the facts of a prior case in which the government's expert had no involvement.   In that prior case, an FBI analyst allegedly misidentified the fingerprint of a defendant as the fingerprint found on a bomb that killed hundreds of people in a terrorist attack in Spain.   The Court did not permit Defendant to explore this collateral matter with the expert.   As the Court explained:

> It is fine to raise the studies to challenge him, but to raise the fingerprinting from another case, that there is no evidence on, just creates a whole sideshow on the fingerprinting in that particular case and what methods were used and how it was done and who conducted it.   And that is not proper cross-examination.
>
> *                      *                      *
>
> I am sustaining the government's objection. This is just a sideshow and it is going to go and delay this trial.   Again, you can use the scientific studies to cross-examine him; but, to start going into the merits of testing done in another case is not appropriate here.

(Tr. at 200-01.)

Moreover, the Court permitted Defendant to extensively cross examine the government's fingerprint expert. Such cross examination enabled Defendant to effectively challenge the opinions of the expert and fully enabled the jury to assess the demeanor of the witness and evaluate his opinions. *See United States v. Kaufmann*, 985 F.2d 884, 888 (7th Cir. 1993).

### F. The Court Properly Instructed the Jury

Defendant next challenges the Court's instruction on the definition of "in furtherance of" in connection with Count Three and the Court's instruction on the elements of a drug conspiracy. As the Seventh Circuit instructs, it "review[s] *de novo* whether jury instructions 'fairly and accurately summarize the law,' and we will reverse only if the instructions, when viewed in their entirety, so misguided the jury that they led to appellant's prejudice." *United States v. Quintero,* 618 F.3d 746, 753 (7th Cir. 2010), citing *United States v. Webber*, 536 F.3d 584, 599 (7th Cir. 2008). Further, the Seventh Circuit has noted, "We afford the district court substantial discretion with respect to the precise wording of the instruction, remembering that reversal is allowed only when the instruction as a whole insufficiently informs the jury of the law." *United States. v. Cruz-Rea*, 626 F.3d 929, 936 (7th Cir. 2010). Furthermore, in reviewing the sufficiency of jury instructions, it is important to look at the instructions as a whole "to determine whether the jury was misled in any way and whether it had understanding of the issues and its duty to determine those issues. ... Jury instructions are sufficient if, taken together, they convey the issues fairly and accurately." *United States v. Johnson*, 584 F.3d 731, 739 (7th Cir. 2009) (citations and quotations omitted). *See also United States v. Palivos,* 486 F.3d 250, 257 (7th Cir. 2007).

### 1. The Court Properly Instructed the Jury on the "In Furtherance Of" Element of Count Three

The Court used the Seventh Circuit pattern jury instruction on this element of Count Three.

Specifically, the Court instructed the jury that

> A person possesses a firearm "in furtherance of" a crime if the firearm furthers, advances, moves forward, promotes or facilitates the crime. The mere presence of a firearm at the scene of a crime is insufficient to establish that the firearm was possessed "in furtherance of" the crime. There must be some connection between the firearm and the crime.

> Possession of a firearm for the purpose of protecting drugs or drug money from robbery is in furtherance of a drug trafficking crime.

(R. 179 at 32.) Defendant objected to this pattern instruction and instead requested that the Court instruct as follows:

> A person possesses a firearm "in furtherance of" a crime if the firearm furthers, advances, moves forward, promotes or facilitates the crime. The mere presence of a firearm at the scene of a crime is insufficient to establish that the firearm was possessed "in furtherance of" the crime. There must be some connection between the firearm and the crime, so you must determine whether a firearm charged in Count Three, the Smith & Wesson model 586 .357 caliber handgun, bearing serial number BDT8737, or the Smith & Wesson model 5906 9mm caliber handgun, bearing serial number TCK1375, helped further the possession with intent to distribute controlled substances on or about February 18, 2010, as charged in Count Two.

> Possession of a firearm for the purpose of protecting drugs or drug money from robbery is in furtherance of a drug trafficking crime.

(R. 170, at 3.) Defendant contends that the Court should have used his proposed instruction to clarify that the "in furtherance" element in Count Three had to pertain to the use of the firearm in furtherance of the drug trafficking crime charged in Count Two. The Court disagrees.

The instructions as a whole made clear that the "in furtherance of" element had to be in furtherance of the drug crime charged in Count Two. Specifically, the Court instructed the jury that

Count Three of the indictment charges the defendant with possession of a firearm in furtherance of a drug trafficking crime. In order for you to find the defendant guilty of this charge, the government must prove each of the three following elements beyond a reasonable doubt:

1.      The defendant committed the crime of possession with intent to distribute a controlled substance as charged in Count Two of the indictment; and

2.      He knowingly possessed a firearm; and

3.      His possession of the firearm was in furtherance of the possession with intent to distribute a controlled substance.

(R. 179 at 31.).   The government clearly argued that it had to prove beyond a reasonable doubt

that Defendant had to possess the firearm in furtherance of the crime charged in Count Two:

Count Three. Count Three charges the defendant with using a firearm in furtherance of a drug-trafficking crime on February 18th, 2010 -- the guns that were found in the storage unit. Those guns were used in furtherance of the drug trafficking crime.   And in order to show this and to establish the defendant's guilty of this offense, the government must show,   first, that the defendant committed the crime of possession with intent to distribute a controlled substance, as charged in Count Two of the indictment; the defendant possessed the items -- the drugs, the marijuana and the cocaine -- found in the unit on February 18th, 2010.   The government must establish that first.

(Tr. at 790.)

The instruction, as well as the government's argument, informed the jury that in order to

find Defendant guilty of Count Three, Defendant had to possess the charged firearms in

furtherance of the drug possession charged in Count Two.   Accordingly, Defendant's argument

fails.

### 2.       The Court Properly Instruction the Jury Regarding the Conspiracy

Regarding Count One, the Court instructed the jury that:

Count One of the indictment charges the defendant with conspiracy. In order for you to find the defendant guilty of this charge, the government must prove both of the following elements beyond a reasonable doubt:

1.      The conspiracy as charged in Count One existed.

21

2.      The defendant knowingly became a member of the conspiracy with an intent to advance the conspiracy.

If you find from your consideration of all the evidence that the government has proved each of these elements beyond a reasonable doubt, then you should find the defendant guilty.

If, on the other hand, you find from your consideration of all of the evidence that the government has failed to prove any one of these elements beyond a reasonable doubt, then you should find the defendant not guilty.

(R. 179 at 18.)   Defendant requested that the Court add another element to Count one, namely, "The defendant conspired knowingly and intentionally to possess with intent to distribute and to distribute 5 kilograms or more of mixtures and substances containing a detectable amount of cocaine, or a quantity of mixtures and substances containing marijuana.   (R. 170 at 2.) Defendant claims that the Court erred in refusing to give this additional element because "the quantity of 5 kilograms or more is an element of the offense and must be proven beyond a reasonable doubt."   (R. 188 at 12.)   The Seventh Circuit has repeatedly held that drug quantity is not an element of an offense under Section 841 or Section 846 of Title 21.   *See United States v. Walker*, 673 F.3d 649, 659 (7th Cir. 2012) (quantity is not an element of a conspiracy to possess drugs for distribution); *United States v Fisher*, 646 F.3d 429,433 (7th Cir. 2011) ("We have consistently held that in the § 841 context, drug type and quantity are not elements of the offense") (citations and quotations omitted); *United States v. Pineda-Buenaventura*, 622 F.3d 761, 774 (7th Cir. 2010) (same).   *Alleyne v. United States*, __ U.S. __, 133 S.Ct. 2151 (2013) does not hold otherwise.

In addition, the jury found beyond a reasonable doubt that Defendant's conspiracy involved more than five kilograms of cocaine.   The special verdict form directed the jury as follows:

If you find defendant JOEL RIVAS guilty of the offense charged in Count One, then you must find the type and the amount of controlled substances involved in the offense charged in Count One that have been proven beyond a reasonable doubt.

The type and amount of controlled substances involved in the offense charged in Count One are: (1) the type and amount of controlled substance that you find, beyond a reasonable doubt, defendant JOEL RIVAS agreed to distribute or to possess with intent to distribute while defendant was a member of the conspiracy; and (2) the type and amount of controlled substances that you find, beyond a reasonable doubt, that defendant JOEL RIVAS's co-conspirators, in furtherance of the conspiracy, agreed to distribute or possess with intent to distribute, and which were known to or reasonably foreseeable to defendant JOEL RIVAS while he was a member of the conspiracy.

Thus the jury decided the quantity of drugs involved beyond a reasonable doubt.

### G.    Defendant's Prior Conviction

Finally, Defendant contends that the Court erred when it permitted the government to cross examine him regarding a conviction on May 13, 2004 for unlawful distribution of 15 to 100 grams of cocaine.   Federal Rule of Evidence 609 "governs the admissibility of a witness's prior convictions for impeachment purposes," *United States v. Rogers*, 542 F.3d 197, 200 (7th Cir. 2008).   Rule 609(a)(1)(B) provides that, in a criminal case, if the witness is the defendant, the Court must admit evidence of a prior conviction for a crime "punishable by death or by imprisonment for more than one year" in the convicting jurisdiction if "the probative value of the evidence outweighs its prejudicial effect to that defendant."   Fed. R. Evid. 609(a)(1)(B); *Romanelli v. Suliene*, 615 F.3d 847, 854 (7th Cir. 2010).   When determining whether the probative value of a prior conviction outweighs any potential prejudice, courts consider the following factors: "(1) the impeachment value of the prior crime; (2) the point in time of the conviction and the defendant's subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of the defendant's testimony; and (5) the centrality of the credibility issue." *United States v. Gant*, 396 F.3d 906, 909 (7th Cir. 2005) (quoting *Rodriguez v.*

*United States*, 286 F.3d 972, 983 (7th Cir. 2002)).   Rule 609(b) further provides, in relevant part,

that if more than ten years have elapsed from the later of "the witness's conviction or release from

confinement," the Court may only admit the conviction if "its probative value, supported by

specific facts and circumstances, substantially outweighs its prejudicial effect."   Fed. R. Civ. P.

609(b)(1).   Pursuant to this standard, "impeachment by a conviction falling outside the rule's

ten-year time limit should be permitted only in rare and exceptional circumstances."   *Rogers,* 542

F.3d at 201.

In advance of trial, the government sought to impeach Defendant with three prior

convictions if he testified at trial: 1) a September 6, 1996 conviction for possession of 15 grams or

more but less than 100 grams of cocaine with intent to deliver   ("Conviction #1); (2) an April 15,

2004 conviction for delivery of 15 grams or more but less than 100 grams of cocaine ("Conviction

#2); and (3) a May 13, 2004 conviction for delivery of 15 grams or more but less than 100 grams of

cocaine.   (Conviction #3.)   The Court only permitted the government to impeach Defendant with

Conviction #3.   As the Court stated:

> Here, the factors weigh in favor of admitting Conviction #3, but not Conviction #2.   The
> risk of prejudice for these convictions is relatively significant because the convictions are
> for delivery of cocaine, and Defendant is charged, among other things, with possession
> with intent to distribute cocaine.   Looking to the fourth and fifth factors, however,
> Defendant's credibility is also important and will become a central issue at trial if
> Defendant testifies.   *See United States v. Montgomery*, 390 F.3d 1013, 1016 (7th Cir.
> 2004).   The charges in this case stem from the search of a storage unit in Elgin, Illinois, in
> which the police recovered narcotics and firearms.   Although Defendant was not present
> at the unit at the time of the search, the government seeks to prove that he possessed with
> intent to distribute and conspired with others to distribute cocaine and marijuana and that
> he unlawfully possessed a firearm.   Among the evidence the government intends to offer
> in support of this theory is testimony from two cooperating witnesses that they purchased
> cocaine and marijuana from the Defendant.   The government also anticipates introducing
> into evidence a call from co-Defendant Ismael Miranda from the Kane County jail to an
> unidentified male, whom the government intends to prove is Rivas, in which the two men
> discussed the police raid of the storage unit.   Thus, in light of all the factors and the
> centrality of Defendant's credibility to the issues of the case if Defendant elects to testify at

trial, the probative value of admitting at least one of the convictions outweighs any prejudicial effect to the Defendant. *See United States v. Toliver*, 374 F. App'x 655, 658 (7th Cir. 2010); *Gant*, 396 F.3d at 910. In addition, because Defendant's status as a convicted felon is an element of the offense of felon-in-possession, the prejudicial impact of the conviction is somewhat diminished because the jury will hear evidence that Defendant is a felon.

(R. 158.) For these reasons, the Court did not err in permitting the government to impeach

Defendant with Conviction #3.

Furthermore, the government did not elaborate on Defendant's prior conviction when cross

examining him. The government, for example, asked Defendant Rivas the following questions

referencing Conviction #3:

Q. That's what drug dealers, do, isn't it?

A. What?

Q. They sell marijuana?

A. Some of them, yeah.

Q. Some of them sell cocaine, too, right?

A. Some of them.

Q. You know all about that, don't you?

A. I had a rendezvous with that before.

Q. A rendezvous, like, if you're talking about your felony conviction, right?

A. Yeah.

(Tr. at 710). They also questioned Defendant:

Q. You knew Miranda was a drug dealer, didn't you?

A. When I was at the ATC?

Q. Yes.

25

A. No.

Q. So, you were a former drug dealer at the time?

A. Uh-huh.

Q. A convicted drug dealer?

A. Uh-huh.

(Tr. at 725.)   In addition, the government did not reference Conviction #3 in its closing

arguments.

## CONCLUSION

For the reasons discussed in detail above, the Court denies Defendant's motion for

judgment of acquittal and his motion for a new trial.

Dated:   October 18, 2013

_____
AMY J. ST. EVE
United States District Court Judge